1

2

3

4

5

6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7   UNITED STATES OF AMERICA,                )

8                       Plaintiff,           )        CV-07-0078-LRS

9        vs.                                 )

10                                           )

11  4824 NORTH MONROE STREET,                )        Final Order of Forfeiture
    SPOKANE, WASHINGTON,                     )
12  TOGETHER WITH ALL                        )
    APPURTENANCES, FIXTURES,                 )
13  ATTACHMENTS, AND                         )
    IMPROVEMENTS THERETO AND                 )
14  THEREUPON,                               )
                                             )
15                      Defendant.           )

16       Plaintiff, United States of America, alleged in a Verified Complaint for

17  Forfeiture In Rem, that the defendant property is subject to forfeiture to the United

18  States pursuant to 21 U.S.C. § 881.

19       The Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and

20  1355.  Venue is proper pursuant to 28 U.S.C. § 1395.

21       The property to be forfeited is real property located at 4824 North Monroe

22  Street, Spokane, Washington, more fully described as follows:

23            Lot 23, Block 20, Allendale Addition, according to Plat
              recorded in Volume "L" of Plats, Page 16, in the City of
24            Spokane, Spokane County, State of Washington.

25            Together with all appurtenances, fixtures, attachments,
              and improvements thereto or thereupon.

26
              SUBJECT to any easements, rights of way, reservations
27            and/or exceptions, and actions of record.

28

Final Order of Forfeiture - 1
4284 N. Monroe Final Order of Forfeiture.wpd

On March 16, 2007, Shawn Davis was served via certified mail with a copy of the Verified Complaint for Forfeiture In Rem, Notice of Complaint for Forfeiture, and Lis Pendens, as evidenced by the Certificate of Service of Notice by Mail, filed in this matter on March 16, 2007. Shawn Davis did not file a timely claim or answer, and a Clerk's Order of Default was entered on June 28, 2007.

On March 28, 2007, US Bank was served via certified mail with a copy of the Verified Complaint for Forfeiture In Rem, Notice of Complaint for Forfeiture, and Lis Pendens. Claimant, US Bank filed its claim to the Defendant real property, and an answer to the complaint on May 18, 2007. On July 13, 2007, the United States and Claimant, US Bank, filed an Expedited Settlement Agreement.

The Notice of Complaint was published on March 22, 29, and April 5, 2007, in the Cheney Free Press, a newspaper of general circulation in Spokane County, Washington, as evidenced by the USM-285 form filed with the Court on April 6, 2007. Rule G of the Supplemental Rules for Certain Admiralty and Maritime Claims, Fed. R. Civ. P., require that claimants file a claim within thirty (30) days after final date of publication of the Notice of Complaint for Forfeiture, or within thirty-five (35) days after direct service of the complaint, whichever occurs first. At the latest the claim period expired on May 7, 2007.

It appearing to the Court that any interest Shawn Davis may have had in the Defendant real property has been resolved by the entry of the Clerk's Order of Default;

It also appearing that the interest of Claimant, US Bank has been resolved through the entry of an Expedited Settlement Agreement.

It further appearing to the Court that no other claims have been made to the Defendant real property;

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the Defendant real property located at 4824 North Monroe Street, in Spokane,

Washington, is hereby forfeited to the United States of America, and no right, title, or interest shall exist in any other person.

IT IS FURTHER ORDERED that the United States Marshals Service shall physically seize and take custody of the subject property, immediately evicting any occupants or tenants therein.

IT IS FURTHER ORDERED, pursuant to the Expedited Settlement Agreement filed by the United States and Claimant, US Bank, that upon sale of the Defendant real property, the United States Marshals Service shall pay Claimant, US Bank, the following amounts:

　　　　a.　　　All unpaid principal on the first mortgage due to Claimant, US Bank, under the Promissory Note, ("hereafter, Note") dated September 30, 1998, which was secured by a Deed of Trust recorded on October 2, 1998, in the official records of the Spokane County Assessor's Office, Recording No. 4276397, and attached hereto as Exhibit A, that is $69,533.61, as of May 14, 2006;

　　　　b.　　　all unpaid interest, which totaled $1,448.60 through May 31, 2007, and additional interest calculated at the base contractual rate (not the default rate) under the above Note assessed at 6.25% per annum, from June 1, 2007, until the date of payment;

　　　　c.　　　All unpaid principal on the second mortgage due to Claimant, US Bank, under the Promissory Note, ("hereafter, Note") dated September 30, 1998, which was secured by a Deed of Trust recorded on October 2, 1998, in the official records of the Spokane County Assessor's Office, Recording No. 4276398, and attached hereto as Exhibit B, that is $426.06, as of May 14, 2006;

　　　　d.　　　all unpaid interest, which totaled $7.12 through May 31, 2007, and additional interest calculated at the base contractual rate (not the default rate) under the above Note assessed at 5% per annum, from June 1, 2007, until the date of payment; and,

      e.    any real estate taxes and/or casualty insurance premiums advanced by Claimant, US Bank.

      IT IS FURTHER ORDERED that the forfeited real property shall be disposed of in accordance with law by the United States Marshals Service.

      DATED this   __20th__   day of July, 2007.

*s/Lonny R. Suko*

Lonny R. Suko
United States District Court Judge

Presented by:

James A. McDevitt
United States Attorney

s/Jared C. Kimball

Jared C. Kimball
Assistant United States Attorney

Final Order of Forfeiture - 4
4284 N. Monroe Final Order of Forfeiture.wpd

4276397
Page:    1 of 9
10/02/1998  03:26P
$16.00  Spokane Co, WA

PIONEER TITLE COMPANY    DT

WHEN RECORDED MAIL TO:

GUILD MORTGAGE COMPANY
DOCUMENT MANAGEMENT DEPT
9160 GRAMERCY DRIVE
SAN DIEGO, CA  92123

GDY02-3728F
552-1003728

# DEED OF TRUST

**GRANTOR(S)** (Last name first, then first name and initials):
1. SHAWN F. DAVIS
2. ANIKA J. DAVIS
3.
4.

☐ Additional Names on Page 1 of Document   ☐ Completed Names on Page 1 of Document

**GRANTEE(S)** (Last name first, then first name and initials):
1. GUILD MORTGAGE COMPANY, A CALIFORNIA CORPORATION
2. PIONEER TITLE COMPANY OF WASHINGTON
3.
4.

☐ Additional Names on Page 1 of Document   ☐ Completed Names on Page 1 of Document

**LEGAL DESCRIPTION:**
LOT 23, BLOCK 20, ALLENDALE ADDITION, ACCORDING TO PLAT
RECORDED IN VOLUME "L" OF PLATS, PAGE 16, IN THE CITY OF
SPOKANE, SPOKANE COUNTY, WASHINGTON.

**REFERENCE NUMBER(S):**

**ASSESSOR'S PROPERTY TAX PARCEL / ACCOUNT NUMBER:**
36313.1823

The Auditor / Recorder will rely on the information provided on this cover sheet. The staff will not read the document to verify the accuracy or completeness of the indexing information provided herein.

GMC 728 (7/97)

5

**EXHIBIT A**



4276397
Page:   2 of 9
10:02:1998   03:26P
PIONEER TITLE COMPANY    OF       $16.00   Spokane Co. WA

WHEN RECORDED MAIL TO:

GUILD MORTGAGE COMPANY
DOCUMENT MANAGEMENT DEPARTMENT
9160 GRAMERCY DRIVE
SAN DIEGO, CA  92123
GDY02~3728F
552-1003728

_____ [Space Above This Line for Recording Data] _____

# DEED OF TRUST

| FHA Case No. |
| --- |
| 562-1662801-703 |

THIS DEED OF TRUST ("Security Instrument") is made on _____ SEPTEMBER 30_____ , ___1998___ .
The grantor is SHAWN F. DAVIS AND ANIKA J. DAVIS, HUSBAND AND WIFE

The trustee is PIONEER TITLE COMPANY OF WASHINGTON _____ ("Borrower").

The beneficiary is GUILD MORTGAGE COMPANY, A CALIFORNIA CORPORATION _____ ("Trustee").

which is organized and existing under the laws of THE STATE OF CALIFORNIA , and whose
address is 9160 GRAMERCY DRIVE, SAN DIEGO, CALIFORNIA 92123 _____ ("Lender").

Borrower owes Lender the principal sum of SEVENTY-NINE THOUSAND TWO HUNDRED SIXTY AND
NO/100------ Dollars (U.S. $ 79,260.00 ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on ___NOVEMBER 1___,
___2028___ . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note,
with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with
interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance
of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose,
Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described
property located in  SPOKANE _____ County, Washington:

      LOT 23, BLOCK 20, ALLENDALE ADDITION, ACCORDING TO PLAT
      RECORDED IN VOLUME "L" OF PLATS, PAGE 16, IN THE CITY OF
      SPOKANE, SPOKANE COUNTY, WASHINGTON.

which has the address of 4824 NORTH MONROE STREET
SPOKANE _____ [Street, City],
Washington ___99205___ [ZIP Code], ("Property Address");

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the
"Property."

    BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the
right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of
record. Borrower warrants and will defend generally the title to the Property against all claims and demands,
subject to any encumbrances of record.

FHA (WA) DEED OF TRUST (GMC 168) (7/97)                              Page 1 of 6

**6**

**EXHIBIT A**

4276397
Page: 3 of 9
10/02/1998  03:26P
PIONEER TITLE COMPANY      DT        $16.00          Spokane Co. WA

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b) and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b) and (c).

3. **Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines this requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property.

FHA (WA) DEED OF TRUST (GMC 168) (7/97)                                                           Page 2 of 6

**7.**

**EXHIBIT A**



4276397
Page: 4 of 9
10/02 1998 03:28P
PIONEER TITLE COMPANY    AT    $16.00    Spokane Co WA

GDY02-3728F                    552-1003728

Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

8

**EXHIBIT A**

4276397
Page: 6 of 9
10/02/1999  03:26P
PIONEER. TITLE COMPANY    DT    $16.00    Spokane Co. WA

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 90 days from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 90 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

FHA [WA] DEED OF TRUST [GMC 166] (7/87)                                                    Page 4 of 6

9

**EXHIBIT A**



4276397
Page: 6 of 9
10:02:1998 03:26P
PIONEER TITLE COMPANY    DT    $16.00    Spokane Co. WA

GDY02-3728F          552-1003728

As used in this Paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as applicable law may require. After the time required by applicable law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by applicable law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

20. Substitute Trustee. In accordance with applicable law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. Use of Property. The Property is not used principally for agricultural or farming purposes.

FHA (WA) DEED OF TRUST (GMC 168) (7/97)                                    Page 5 of 6

**10**                                                        **EXHIBIT A**



4276397
Page: 7 of 9
10/02/1998  03:26P
PIONEER TITLE COMPANY    DT    $16.00    Spokane Co. WA

**Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

☐ Condominium Rider            ☐ Growing Equity Rider        ☐ Non-Owner Occupancy Rider
☐ Planned Unit Development Rider  ☐ Graduated Payment Rider     ☐ Tax-Exempt Financing Rider
☐ Adjustable Rate Rider         ☒ Other  SINGLE-FAMILY DEED OF TRUST RIDER

   BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____        _____
SHAWN F. DAVIS                          ANIKA J. DAVIS

_____        _____

State of Washington
County of ____Spokane____

I certify that I know or have satisfactory evidence that SHAWN F. DAVIS AND ANIKA J. DAVIS

is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument and acknowledged it to be (his/her) free and voluntary act for the uses and purposes mentioned in the instrument.

Dated: ____10-1-98____

_____
Notary Public
My appointment expires: ____10-9-98____

FHA (WA) DEED OF TRUST (GMC 188) (7/97)                                    Page 6 of 6

**11**                                                              **EXHIBIT A**

4276397
Page: 8 of 9
10/02/1998 03:25P
PIONEER TITLE COMPANY    DT    $16.00    Spokane Co. WA

## WASHINGTON STATE HOUSING FINANCE COMMISSION SINGLE-FAMILY
## DEED OF TRUST RIDER FHA & VA

This Rider, made this 30TH  day of SEPTEMBER , 1998 , is attached and incorporated into and shall be deemed to amend and supplement the Deed of Trust of the same date (the "Deed of Trust") given by the undersigned ("Grantor") to secure its Note of the same date (the "Note") to  PIONEER TITLE COMPANY OF WASHINGTON
, as Trustee, for the benefit of  GUILD
MORTGAGE COMPANY, A CALIFORNIA CORPORATION
, as "Beneficiary," which includes any successors or assigns thereof.  The Property encumbered by the Deed of Trust shall be called the "Property."  The Provisions of this Rider shall control any conflicting provisions in the Deed of Trust.

The following provisions are hereby incorporated into the Deed of Trust:

1. Acceleration.  As long as this Deed of Trust is held by the Washington State Housing Financing Commission (the "Commission") or its trustee, or secures or "backs" a Government National Mortgage Association ("GNMA") mortgage pass-through certificate, the Lender may, at Lender's option, dec'are all sums secured by the Mortgage to be immediately due and payable if Borrower omits or misrepresents a fact in an application for the Deed of Trust, including, without limitation, anything contained in the Mortgagor's Affidavit executed by the Borrower in conjunction with this Deed of Trust.  As an alternate remedy, Beneficiary may increase the interest rate provided for in the Note in an amount not to exceed that permitted by applicable law.  For purposes of this alternate remedy only, "Beneficiary" shall not include the Commission or its trustee.

The following paragraph is added concerning transfer of property and assumption procedures:

2. Transfer of Property; Assumption.  If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent, excluding

(a) the creation of a lien or encumbrance subordinate to this Deed of Trust,

(b) the creation of a purchase money security interest for household appliances, or

(c) a transfer by devise, descent or by operation of law upon the death of a joint tenant, Lender may, at Lender's option, declare all sums secured by this Deed of Trust to be immediately due and payable.  Lender shall waive such option to accelerate if:

(A) the person to whom the Property is to be sold or transferred (the "Transferee")

(1) has at the time of such transfer an Annual Family Income (as defined below) not in excess of the then current Maximum Annual Family Income as established by the Commission for persons and families in the statistical area in which the Property is located;

(2) intends to use the Property as his or her principal residence within sixty (60) days of the date the Deed of Trust is assumed and intends to maintain the residence as his or her principal residence as long as he or she is liable under the Note; and

(3) has not, at any time during the three-year period ending on the date the Deed of Trust is assumed, had a present ownership interest in a principal residence (except in the case of a residence in a Targeted Area as hereinafter defined) unless Borrower at time this Deed of Trust was executed was not required to be a first-time homebuyer pursuant to Section 143 of the Internal Revenue Code of 1986, and the regulations thereunder ("Section 143");

(B) the credit of the Transferee is satisfactory to the Lender;

(C) the entire unpaid principal amount of the Mortgage Loan will continue to be insured by a private mortgage insurer acceptable to the Commission;

(D) the assumption by the Transferee has been approved by the Commission;

(E) on the date of transfer the Purchase Price (as defined below) of the Property does not exceed the Maximum Purchase Price established by the Commission from time to time (for the same type of residence in the statistical area in which the Property is located) in accordance with Section 143;

(F) the Transferee executes a written agreement with the Lender assuming the obligations under the Note and this Deed of Trust; and

(G) the Transferee executes such affidavits and documents as are necessary to assure the Lender that the requirements of this paragraph are satisfied.

For purposes of the preceding paragraph, the following words and phrases have the following meanings:

(a) "Annual Family Income" means gross monthly income multiplied by 12.  Gross monthly income is the sum of monthly gross pay; any additional income from overtime, part-time employment, bonuses, social security benefits,

HOUSE KEY FORM C-2000 (Rev. 10/97)

GMC 298 (1/98)    Page 1 of 2

**12**

**EXHIBIT A**

4276397
Page:    9 of 9
10/02/1998  03:26P
PIONEER TITLE COMPANY    DT    $16.00    Spokane Co, WA

unemployment compensation, income from trusts and income received from business investments. Information with respect to gross monthly income may be obtained from available loan documents executed during the 4-month period ending on the date of closing of the mortgage, provided that any gross monthly income not included on the loan documents must be taken into account.

(b) "Purchase Price" means the cost of acquiring a residence from the seller as a completed residential unit, including (i) all amounts paid, either in cash or in kind, by the purchaser (or a related party or for the benefit of the purchaser) to the seller (or a related party or for the benefit of the seller) as consideration for the residence; (ii) if a residence is incomplete, the reasonable cost of completing the residence whether or not the cost of completing construction is to be financed with proceeds of the mortgage loan secured by this Deed of Trust; and (iii) where a residence is purchased subject to a ground rent, the capitalized value of the ground rent; but excluding (i) the usual and reasonable settlement or financing costs, e.g., titling and transfer costs, title insurance, survey fees or other similar costs and credit reference fees, legal fees, appraisal expenses, "points" that are paid by the buyer or other costs of financing the residence; (ii) the value of services performed by the Borrower or members of the Borrower's family in completing the residence; and (iii) the cost of land which has been owned by the Borrower for at least two years prior to the date on which construction of the residence begins.

(c) "Targeted Area" means the areas within the State of Washington listed as Qualified Census Tracts, that is, areas in which at least 70% of the population makes 80% or less of the areas' median family income or areas designated as "Chronically distressed."

**3. Tax Covenants.** The Borrower covenants to execute an affidavit in order to comply with Section 143. The Borrower covenants herein and in such Affidavit that:

(a) the residence is located in the State of Washington;

(b) at the time of execution of this Deed of Trust, Borrower has Annual Family Income not in excess of the then current Maximum Annual Family Income as established by the Commission from time to time;

(c) Borrower will occupy such residence as his or her principal residence within sixty (60) days of execution of this Mortgage, will not use the residence in a trade or business, as an investment property or as a recreational home, and intends to use the residence as his or her principal residence as long as Borrower is liable under the Note;

(d) Borrower had no present ownership interest in a principal residence (other than the Property) during the three-year period ending on the date of execution of this Deed of Trust (unless the residence is in a Targeted Area or Borrower was otherwise not required to be a first-time homeowner pursuant to Section 143);

(e) the Purchase Price of the Property does not exceed the appropriate Maximum Purchase Price established by the Commission from time to time;

(f) Borrower had no permanent mortgage loan on the Property at any time prior to executing this Deed of Trust and

(g) the Borrower understands that if there is a continuous period of at least one year during which the residence is not the principal residence of at least one of the Borrowers, then no deduction is allowed in computing taxable income for interest that accrues with respect to this Deed of Trust on or after the date such one-year period began.

The Borrower covenants to take no action which would:

(a) cause the foregoing representations which evidence compliance with Section 143 to be untrue or

(b) in any way adversely affect the eligibility of this Deed of Trust and the Note for purchase by the Commission under Section 143.

**4. Failure to Purchase.** The Borrower further agrees that should this Deed of Trust and the Note secured hereby not be eligible for purchase by the Commission within seventy-five (75) days of the date hereof (written statement of the trustee or servicer for the Commission dated subsequent to such seventy-five (75) day period declining to purchase said Note and this Deed of Trust being deemed conclusive proof of such ineligibility) the mortgagee or holder of said Note may, at its option declare all sums secured hereby immediately due and payable.

_SHAWN F. DAVIS_

_ANIKA J. DAVIS_

HOUSE KEY **FORM C-2000** (Rev. 10/97)

GMC 298 (1/98)    Page 2 of 2

**13.**

**EXHIBIT A**

# Exhibit B

14

4276398
Page: 1 of 8
10/02/1998 03:26P
PIONEER TITLE COMPANY    DT    $15.00    Spokane Co. WA

After recording return to:

GUILD MORTGAGE COMPANY
DOCUMENT MANAGEMENT DEPARTMENT
9160 GRAMERCY DRIVE
SAN DIEGO, CA  92123

GDY02-3744S
552-1003744

P253866

## HOUSE KEY PLUS DEED OF TRUST

Grantor/Borrower:        SHAWN F. DAVIS AND ANIKA J. DAVIS

Grantee/Beneficiary:     GUILD MORTGAGE COMPANY

Grantee/Trustee:         PIONEER TITLE COMPANY OF WASHINGTON

Legal Description:       LOT 23, BLOCK 20, ALLENDALE ADDITION, VOL. "L"
    Abbreviated Form:  OF PLATS, PG. 16
    Additional legal is on page / _____ of document
                          EXHIBIT "A"
Assessor's Tax Parcel ID#:  36313.1823

THIS DEED OF TRUST is made this __30TH__ day of __SEPTEMBER__, 19 98, among the Grantor, SHAWN F. DAVIS AND ANIKA J. DAVIS, * (herein "Borrower"), PIONEER TITLE COMPANY OF WASHINGTON (herein "Trustee"), and the Beneficiary, GUILD MORTGAGE COMPANY, a corporation organized and existing under the laws of CALIFORNIA, whose address is 9160 GRAMERCY DRIVE, ** (herein "Lender").

BORROWER, consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of SPOKANE, State of Washington:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

*  HUSBAND AND WIFE
** SAN DIEGO, CA  92123

which has the address of __4824 NORTH MONROE STREET__, __SPOKANE__
                              {Street}                      {City}

7/28/98                         Page 1 of 6              FORM HKP-0400

**15**                                          **EXHIBIT B**

4276398
Page: 2 of 8
10/02 1998 00:26P
PIONEER TITLE COMPANY      DT      $15.00      Spokane Co. WA

Washington _____99 205_____, {herein "Property Address");
        {Zip Code)

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property";

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated SEPTEMBER 30, 1998 and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $2,000.00 _____, with interest thereon, with the indebtedness, if not sooner paid, due and payable on NOV. 1, 2008 (the "Maturity Date" as defined in the Note); the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.        Payment of Principal and Interest.  Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.
2.        Funds for Taxes and Insurance.  Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest shall be paid on the Funds. Unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender.  If under paragraph 16 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.
3.        Application of Payments.  Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.
4.        Prior Mortgages and Deeds of Trusts; Charges; Liens.  Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due.  Borrower shall pay or cause to be paid all taxes,

7/28/98

FORM HKP-0400

**16**

**EXHIBIT B**

4276398
Page:   3 of 8
10/02/1998  03:26P
PIONEER TITLE COMPANY      DT      $15.00   Spokane Co. WA

assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

5.      **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the terms "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld.  All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender.  Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

6.      **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold.  If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7.      **Protection of Lender's Security.**  If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest.  If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust.  Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof.  Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8.      **Inspection.**  Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9.      **Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

10.     **Borrower Not Released; Forbearance By Lender Not a Waiver.**  Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest.  Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11.     **Successors and Assigns Bound; Joint and Several Liability; Co-signers.**  The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof.  All covenants and agreements of Borrower shall be joint and several.  Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property of Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

7/28/98                          Page 3 of 6                          **FORM HKP-0400**

**17**                                                              **EXHIBIT B**

4276398
Page: 4 of 8
10/02/1999 03:26P
PIONEER TITLE COMPANY    DT    $15.00    Spokane Co. WA

12.    **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13.    **Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14.    **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

15.    **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16.    **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person), Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust, or if Lender has executed a separate written waiver of this option.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

17.    **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Borrower shall be in default under this Deed of Trust and Lender may accelerate the Note and exercise any of its rights and remedies hereunder or available at law. Lender, prior to acceleration, shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date of notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorney's fees and costs of evidence of title.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as applicable law may require. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorney's fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

18.    **Insufficient Sale Proceeds.** In the event of a sale of the Property at fair market value, and if such sale does not result in sufficient proceeds to satisfy the Note, Beneficiary will nevertheless request reconveyance of this Deed of Trust at the closing of such sale, provided that Beneficiary receives all proceeds available after satisfaction of the prior deed of trust and payment of customary sale and closing costs. In such event, no sale proceeds shall be paid to Grantor (i.e., Grantor

7/28/98

**FORM HKP-0400**

**18**

**EXHIBIT B**

4276398
Page: 5 of 8
10:02:1998 03:26P
PIONEER. TITLE COMPANY    DT        $15.00    Spokane Co. WA

will not receive any cash from the sale). "Fair market value" as used in this paragraph shall mean the price received by Grantor in an arm's length sale to a third party after listing the property for sale with a multiple listing service or otherwise publicly advertising the Property. Fair market value shall not be less than the value established by the purchaser's appraisal of the Property or any appraisal obtained by Beneficiary at its option for the purposes of establishing fair market value under this paragraph.

19.    **Assignment of Rents; Appointment of Receiver; Lender in Possession.** Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to premiums on receiver's bonds, costs of management of the Property, collection of rents, and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

20.    **Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

21.    **Substitute Trustee.** In accordance with applicable law, Lender, may from time to time appoint a successor trustee to any Trustee appointed hereunder. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law.

22.    **Request for Notices.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of sale from the holder of any lien which has priority over this Deed of Trust given pursuant to RCW 61.24.040 be sent to Lender's address, as set forth on page one of this Deed of Trust.

23.    **Use of Property.** The Property is not used principally for agricultural or farming purposes.

24.    **Subordination.** This Deed of Trust is and shall be automatically subordinate to any existing first deed of trust or mortgage on the Property made by or held by an institutional lender or investor and originated through a Washington State Housing Finance Commission commitment.

25.    **Misrepresentations.** The Borrower understands that Lender has relied upon statements contained in the Mortgagor's Affidavit and Certificate and all other documents submitted in support of the loan application in the processing, financing and granting of this loan. Upon discovery of fraud or misrepresentation by the Borrower with respect to any information provided by Borrower in the loan application or Mortgagor's Affidavit and Certificate executed in connection with the Note, Lender may, in its sole discretion, by written notice to Borrower, declare all obligations secured by the Deed of Trust and all obligations payable under the Note immediately due and payable and exercise any other remedy allowed by law or provided by the Deed of Trust. Borrower shall notify Lender promptly in writing of any transaction or event which may give rise to a right of acceleration hereunder. Borrower shall pay to Lender all damages sustained by reason of the breach of the covenant of notice set forth herein or by reason of such fraud or misrepresentation.

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

Borrower    SHAWN F. DAVIS

Borrower    ANIKA J. DAVIS

**19**                                                                        **EXHIBIT B**

4276398
Page:    6 of 8
10/02/1998  03:26P
PIONEER TITLE COMPANY       DT        $15.00    Spokane Co. WA

STATE OF WASHINGTON, _____*Spokane*_____ County ss:

On this _1st_ day of _____*Oct.*_____, 199_8_, before me, the undersigned, a Notary Public in and for the State of Washington, duly commissioned and sworn, personally appeared SHAWN F. DAVIS AND ANIKA J. DAVIS _____, to me known to be the individual(s) described in and who executed the within and foregoing instrument, and acknowledged to me that he/she/they signed and sealed the said instrument as his/her/their free and voluntary act and deed, for the uses and purposes therein mentioned.

WITNESS my hand and official seal.  Signature: _Diana M. Cavanaugh_

(Reserved for official seal)    Name (Typed or Printed) _Diana M. Cavanaugh_

Residing at: _Spokane, WA_

My Commission expires: _10-9-98_

### REQUEST FOR RECONVEYANCE

TO TRUSTEE:

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Dated: _____    _____

7/28/98                    Page 6 of 6                    **FORM HKP-0400**

**20**                                                    **EXHIBIT B**

4276398
Page:   7 of 8
10/02/1998  03:26P
PIONEER TITLE COMPANY    DT        $15.00   Spokane Co. WA

## EXHIBIT A

GDY02-3744S
552-1003744

LEGAL DESCRIPTION:

LOT 23, BLOCK 20, ALLENDALE ADDITION, ACCORDING TO PLAT
RECORDED IN VOLUME "L" OF PLATS, PAGE 16, IN THE CITY OF
SPOKANE, SPOKANE COUNTY, WASHINGTON.

**21**

**EXHIBIT B**

4276398
Page: 8 of 8
10/02/1998 03:26P
PIONEER TITLE COMPANY    DT    $15.00    Spokane Co. WA

GDY02-3744S
552-1003744

| HOUSE KEY PLUS |
| DEED OF TRUST RIDER |

This Deed of Trust Rider is attached to and made a part of the Deed of Trust dated SEPTEMBER 30, 1998 made payable to __GUILD MORTGAGE COMPANY__ as Lender and executed by Borrower.

**1.**    Borrower agrees to the provisions of this Deed of Trust Rider in addition to those of the Deed of Trust.

**2.**    Lender and Borrower acknowledge and agree that the Deed of Trust is subject and subordinate in all respects to the liens, terms, covenants and conditions of the prior deed of trust on the property (the "Property") encumbered by the *Deed of Trust*, made in favor of an *institutional lender* (the "*First Deed of Trust*") and to all advances heretofore made or which may hereafter be made pursuant to the First Deed of Trust including all sums advanced for the purpose of (a) protecting or further securing the lien of the First Deed of Trust, curing defaults by the Borrower under the First Deed of Trust or for any other purpose expressly permitted by the First Deed of Trust or (b) constructing, renovating, repairing, furnishing, fixturing or equipping the Property. The terms and provisions of the First Deed of Trust are paramount and controlling, and they supersede any other terms and provisions hereof in conflict therewith. In the event of a foreclosure or deed in lieu of foreclosure of the First Deed of Trust, any provisions herein or any provisions in any other collateral agreement restricting the use of the Property to low or moderate income households or otherwise restricting the Borrower's ability to sell the Property shall have no further force or effect on subsequent owners or purchasers of the Property (other than the Borrower or a related person or entity of the Borrower). Any person, including its successors or assigns (other than the Borrower or a related person or entity of the Borrower), receiving title to the Property through a foreclosure or deed in lieu of foreclosure of the First Deed of Trust shall receive title to the Property free and clear from such restrictions.

Further, if the holder of the First Deed of Trust (the "Senior Lien Holder") acquires title to the Property pursuant to a deed in lieu of foreclosure, the lien of the Deed of Trust shall automatically terminate upon the Senior Lien Holder's acquisition of title, provided that (i) Lender has been given written notice of a default under the First Deed of Trust and (ii) Lender has not cured the default (which cure option may be exercised in Lender's sole discretion) under the First Deed of Trust, or diligently pursued curing the default as determined by the Senior Lien Holder, within the 60-day period provided in such notice sent to Lender.

**3.**    The Borrower understands that Lender has relied upon statements contained in the Mortgagor's Affidavit and Certificate and all other documents submitted in support of the loan application in the processing, financing and granting of this loan. Upon discovery of fraud or misrepresentation by the Borrower with respect to any information provided by Borrower in the loan application or Mortgagor's Affidavit and Certificate executed in connection with the Note, Lender may, in its sole discretion, by written notice to Borrower, declare all obligations secured by the Deed of Trust and all obligations payable under the Note immediately due and payable and exercise any other remedy allowed by law or provided by the Deed of Trust. Borrower shall notify Lender promptly in writing of any transaction or event which may give rise to a right of acceleration hereunder. Borrower shall pay to Lender all damages sustained by reason of the breach of the covenant of notice set forth herein or by reason of such fraud or misrepresentation.

**NOTICE TO BORROWER:**
Do not sign this Deed of Trust Rider if it contains blank spaces. All spaces should be completed before you sign.

_____    _____
BORROWER  SHAWN F. DAVIS            DATE OF SIGNATURE

_____    _____
BORROWER  ANIKA J. DAVIS           DATE OF SIGNATURE

Rev. 9/97                          FORM HKP-0500

**22**                             **EXHIBIT B**